BENJAMIN YOUNG AND MARY A. YOUNG v. EDWIN P. BARRAS AND FRANCES E. BARRAS.

*Partnership—Accounting.*

This case involves a partnership accounting, and is one of fact purely.

Appeal from Delta. (Grant, J.) Argued February 5, 1889. Decided April 12, 1889.

Bill to obtain an accounting. Defendants appeal. Decree modified and affirmed. The facts are stated in the opinion.

*John Power* (*Edward Cahill,* of counsel), for complainants.

*F. O. Clark,* for defendants.

CHAMPLIN, J. By consent of parties the bill filed in this case has been treated as a bill filed to obtain an accounting of partnership affairs between Benjamin Young and Frances E. Barras.

Young had obtained a contract with the State for building a State road, called the "Day's River & Bay de Noquette State Road," for which he was to receive as compensation certain lands, called "State Swamp Lands." Being without means to carry forward the work, he entered into a written contract with Frances E. Barras, by which she agreed to furnish the means and credits for building the road, which were to be considered of the same value as the time and labor of Young in prosecuting the work. The contract then provided how the proceeds of the land should be applied. Young was to have

charge and control of the working force upon the road, and Edwin P. Barras, the husband of Frances, was to have the financial management and control of building the road, and sale of lands. The capital invested by Frances E. Barras was not to draw interest until one year from November 1, 1879, that being the time set for completion of the road, but all capital advanced or money expended in any manner, after November 1, 1880, was to draw interest at 10 per cent. per annum until paid. The profits in building of bridges or culverts were also to be shared equally, and the proceeds of the same were to be applied to the building of said road. Provision was also made, after one-half of the road was built, to raise money, not exceeding $3,000, by giving security upon the lands.

The matter of accounting was referred by the circuit court sitting in chancery to three referees, who heard the testimony and made their report. Certain items of defendants' account were disallowed, and exceptions were filed based thereon. Upon hearing, the circuit judge modified the report of the referees by allowing one item of $50 in favor of defendants, and also by allowing interest from October 1, 1882, instead of from September 1, 1885, and so modified, affirmed the report.

The first item disallowed by the referees complained of is one under date of October 18, 1878,—five barrels of pork, $70, and three barrels of beef, $39; total, $109. Concerning these supplies, there was conflicting testimony. Counsel for appellants criticises the action of the court below in deferring to the judgment of the referees in all cases where there was a conflict of testimony, and insists that he should have considered and weighed the testimony independently of the conclusions of the referees, and it is claimed that if he had done so the items disallowed would not have been rejected. In view of this criticism we have gone carefully over the testimony, and are free

to confess that we find ourselves pretty much in the same predicament as the circuit judge. It was the duty of Edwin P. Barras, who was agreed upon as the financial agent of the parties, and who represented his wife's interests, to keep just and accurate accounts of all moneys and supplies furnished for the job, and to be able to produce vouchers for moneys or supplies advanced. But he has not done so. When he purchased supplies from "outside," he certainly ought to be able to produce the bills of the goods purchased. It appears that he ordered goods from resident dealers for use in the construction of the State road, and claimed that he had obtained bills from such dealers showing the goods furnished; but he did not produce them, and testified that he had lost them. He was also engaged a portion of the time in carrying on jobs of his own, which required the same kind of supplies, and it does not satisfactorily appear that he always kept a separate account of these supplies. He borrowed money, upon the pledge of these lands as security, for the purpose of building the road, and placed the same in bank to his credit as agent or attorney, and drew checks upon this fund for his own private use, as well as for the purpose of paying men, and for supplies for the road.

With respect to this item Young testified positively that he had never received it. But I do not think the referees disallowed it upon the testimony of Young, for they allowed many items which he positively swore that he had not received. It appears more likely that the referees were not satisfied from the testimony of Mr. Barras that it was a proper charge. Barras testifies he furnished it himself. But how did he furnish it? He says he bought the goods from "outside," but produces no bill of them, and he says that he rolled them in his back office, and charged them in one lot, in bulk, "and Mr. Young used them as he wanted them." His atten-

tion was then called to a prior charge, under date of August 10, 1878,—one barrel of pork and one barrel of beef,—and asked from whence came that. He replied that he did not recollect. He was then asked if that was not part of the same lot, and he said that he did "not think it." He was then asked, "Did you supply that?" and he replied, "I do not remember." Mr. Young, after stating positively that he did not receive these items, says that he is not sure that he did not get another barrel of pork, and thinks he did get another barrel of beef, but is positive that he did not get more than two barrels of pork and two barrels of beef.

I think this testimony of Young, with his admission that he got the barrel of beef and barrel of pork August 10, in connection with the other facts, shows that the claim ought to have been allowed. He commenced work on the job the early part of August, with two men, and afterwards he got two or three more. He finished working on the road in November, and then went to building bridges, and worked at that until January. Now, if, with from two to five men, he found it necessary to obtain a new supply of beef and pork by October 18, which he thinks he did, and then employed from twelve to fifteen hands working on the road for two or three weeks, and afterwards continued work upon the bridges, it is quite evident that one additional barrel of pork and beef, obtained October 18, would not have been sufficient, and, as no pork or beef was obtained after that until the next June, the probabilities are that the testimony of Mr. Barras is correct, and we think this item should have been allowed.

Respecting the item disallowed,—"June 13, 1879, paid McKenna $46,"—we think it was properly disallowed. McKenna was a dealer in supplies. Barras' account shows that on that day he paid McKenna $46, and also pur-

chased of him one barrel of beef, $12; one barrel of pork, $14, and paid Fogarty $5.50. He testifies that the $46 paid were for supplies, but produces no bill for the goods, nor receipt for the money.

We think the item under date of June 2, 1882 (cash paid Colwell), should have been allowed.

The amount of the check paid to Edwin Brownlee ($15, August 7, 1880) should have been allowed. It is true that this item is not in the account of defendant as filed, but the proof is clear that he worked on the State road, and the correctness of the item is admitted by Young.

We have examined the testimony respecting the other items of defendant's accounts disallowed, and see no reason for disturbing the finding of the referees in regard to them.

With reference to the account rendered by Mr. Young we must say that it is still more unsatisfactory than that rendered by Mr. Barras. It is not itemized, and only years and months are given. One item is: " 1881, Oct. To paid men from private funds, $300;" and another, without any date: "To for labor on road and bridge from money received from sales of land and bridge contract, $2,400." He claims that he had an account of these moneys paid upon a pass-book, which he says he used in making up the account, and afterwards he laid it upon the mantel with other pass-books, relating to other jobs, and "they got burned up." The referees allowed his account, with the exception of amounts charged for his personal labor, and charged him with amounts received from sale of lands, and from bridge contracts. Young testifies that he had no means of his own with which to build the State road. He admits receiving for building bridges and culverts on the line of this road the following:

| | | |
|---|---|---|
| Little Fish Dam river bridge | $200 | 00 |
| Deer Creek bridge | 100 | 00 |
| Bridge at Big Fish Dam river | 700 | 00 |
| Bulls Run bridge | 300 | 00 |
| Sturgeon river bridge | 600 | 00 |
| Two or three small creek bridges | 120 | 00 |
| Total | $2,020 | 00 |

He also admits having received from sale of lands the following:

| | | |
|---|---|---|
| Bill Koughton | $190 | 00 |
| Peter Plant | 100 | 00 |
| D. Farley | 100 | 00 |
| Pat McFee | 150 | 00 |
| Fred Cota | 100 | 00 |
| William Humstead | 260 | 00 |
| John Saxton | 50 | 00 |
| Hall | 75 | 00 |
| John Armstrong | 75 | 00 |
| O'Callaghan, for stumpage | 40 | 00 |
| Total | $1,140 | 00 |

He also testifies that he used $300 of his own private means. This constitutes all the money he has received from any source and used in the construction of the road, and he says it was all so used. This makes the total amount of his expenditures for labor, board, and supplies, $3,460. The referees allowed him $4,199, which includes item of $2,400 charged for amount paid laborers in one gross sum, being $739 more than he had received money with which to pay, and according to Mr. Young's testimony the items charged in his bill have all been paid for, except one item of $45 to Mr. Purdy. There is considerable doubt with reference to the items paid Atkins for supplies, in August, 1881, amounting to $150. This doubt could have been removed by recalling Mr. Atkins; but neither party saw fit to do so. These items will be permitted to stand. I think the referees were in

error in allowing this item to stand at $2,400, as the result demonstrates that it cannot be correct. The most favorable view I can take under the testimony is to allow Mr. Young a balance in his favor of the Purdy item of $45. But against this must be charged one-half of the balance of cash and goods furnished by Frances E. Barras to Mr. Young for his own use, and not used in the construction of the road, and about which there is no dispute. This balance is, without interest, $152, one-half of which, $76, with interest, should be charged against Young in this accounting. It is true that the referees allowed Mrs. Barras the full amount of this account as advances, with interest, and she, under the contract, is entitled to be repaid the full amount of her advances, with interest, before a division of the assets. But she is to be repaid in full out of a joint fund, and her share of such fund will be reduced by just one-half of the amount from what it would have been if Young repaid these advances from his own means.

The circuit court was right in allowing the $50 mentioned in the decree, in favor of Mrs. Barras. We shall not disturb the decree appealed from, with reference to the time from which the interest on advances is to commence.

The decree must be so modified as to provide for the repayment to Mrs. Barras of her advances, and interest, and the debt contracted for building the road, taxes, expenses, and liens, out of assets, before any division is made. There must be a record of the interest upon the advances as allowed by the foregoing finding, and the decree below modified accordingly, and as so modified it will be affirmed.

The other Justices concurred.