MACK v. ENGEL.

1. APPEAL AND ERROR— EQUITY — PRACTICE—REGISTER'S FEE— JOINT APPEAL—COSTS.

   Only one fee, on appeal, is required to be paid the register in chancery, under Act No. 299, Pub. Acts 1909, and after its payment by either party, the opposite party may claim the benefit of an appeal, the adjustment of costs to be made on final decree.

2. INTEREST—PARTNERSHIP ASSOCIATIONS LIMITED—ADVANCES BY PARTNER.

   As between partners, one who had advanced funds for partner-

ship purposes beyond the amount of the agreed contribution, is entitled to collect interest thereon at the legal rate, independently of any express agreement.

3. SAME.

Interest on such advances is due a member of a partnership association, limited, as in case of an ordinary partnership.

4. SAME—RATE.

No agreement in writing for a higher rate than 5 per cent. being shown, the rate fixed by Act No. 207, Pub. Acts 1899, i. e., 5 per cent., governs.

5. EQUITY—ESTOPPEL— DECREE — INTERLOCUTORY ORDER —JUDGMENT.

A defendant, in a suit to secure an accounting of a sale of partnership property, is estopped, after obtaining an interlocutory order confirming the validity of the sale as to complainants, from setting up fraud of the vendee to invalidate it.

6. SALES—PARTNERSHIP ASSOCIATIONS—DEALINGS WITH PARTNER —CORPORATIONS.

Sales of lumber made in good faith by a member and officer of a partnership association to the firm, at current market prices, determined by agreement with other members of the association, are valid.

7. JOINT STOCK COMPANIES—PARTNERSHIP ASSOCIATIONS, LIMITED —CONTRACTS.

Such association is liable for lumber purchased of an officer in good faith, with knowledge of the complaining partners, who made no objection for more than seven years, during which the account was made, although some sales were in excess of $500 and no contract in writing signed by two officers of the association was executed, as provided by 2 Comp. Laws, § 6083.

8. SAME—PROFITS OF MEMBER—BONA FIDES—FIDUCIARY RELATIONS.

On a proposed sale of the partnership assets, in which the defendant member attempted to secure a profit to himself by purchasing land at $1,400 and including it in the transfer at an increased price, no actual profits appearing because the deal was rescinded for fraud of the purchaser, the association was not entitled to participate in the individual transaction.

9. SAME—ACCOUNTING.

Where the defendant agreed to accept stock in the purchasing corporation for his indebtedness due from the partnership, and was compelled by the final decree to accept the property

to be transferred instead of such stock, the transfer being rescinded on his claim of attempted fraud by the transferee, the decree was equitable and defendant who thereby sustained a loss should not be further penalized.

10. SAME—WINDING UP—DISSOLUTION—PARTIES.

Although the partnership association, limited, was not made a party defendant in a proceeding for accounting, to which all the other persons interested were made parties, and in which they ask a decree of dissolution, an order dissolving it was properly entered.

Appeal from Kent; Perkins, J. Submitted February 17, 1911. (Docket No. 65.) Decided May 8, 1911.

Bill by Ida Mack and John Mack against George Engel, James W. Latta, Jacob L. Engel, the Doxtator Revolving Cased Shelving Company and Louis C. Parmenter for an injunction, an accounting and other relief. From a decree for defendant, complainant Ida Mack appeals. Affirmed.

*A. A. & H. A. Ellis*, for complainants.

*G. A. Wolf* (*J. T. McAllister*, of counsel), for defendants.

Complainant John Mack had been engaged in manufacturing carriage bodies, sleighs, and cutters since 1873. In 1892 he erected a building in Grand Rapids and continued in the same line of business until 1902. At that time Mack had a mortgage for $1,900 on his plant besides some other indebtedness. In June of that year, a partnership association, limited, known as the "Mack Sleigh Company," was organized with a capital stock of $4,000. This stock appears to have been paid for wholly by a transfer to the company of the property Mack had theretofore owned. The stock was issued as follows: John Mack, $100; Ida Mack, $1,800; George Engel, $1,900; Sherwood Hall, $200.

Hall paid nothing for his stock, and it was later purchased by Engel and reissued to defendants George and

Jacob Engel and James W. Latta. Engel paid for his stock in full; the money apparently having been used to pay the mortgage upon the plant. Ida Mack paid nothing for her stock; its value being represented by the property turned over to the association by her husband. The company had no capital whatever with which to conduct its business. The money necessary to finance the concern was, from the first, furnished by defendant George Engel. Complainant John Mack, who at the time of the hearing in the court below (1910) was a man 74 years of age, was retained as manager of the manufacturing, and was paid for his services $50 per month. He continued in this position and drew this salary up to the time of the hearing.

Defendant George Engel, at the time of the formation of the association, was a manufacturer of, and dealer in, lumber. During the eight years the business was prosecuted, he sold to the Mack Sleigh Company approximately 300,000 feet of lumber. During the same period, Mack purchased for the company considerable lumber from outside sources. At the time the association was organized, George Engel, John Mack, and Sherwood Hall were elected managers, and Engel was chosen chairman, Mack secretary, and Hall treasurer.

Hall never performed the duties of his office, and severed his connection with the concern at an early date. From the beginning the books were kept in Engel's office by Engel's bookkeeper, and all the finances were handled by him, except that, ordinarily, the money for the pay roll was handed to Mack, who distributed it among the employés. Engel made advances either in money or lumber, from time to time, during the whole period of operation, and furnished to Mack trial balances each month, showing the state of the business including the amount of his own account. Included in this account were charges for interest at 6 per cent. per annum on the sums advanced by Engel, and also a charge of $100 per year for keeping the books and transacting the financial

business of the firm.  The concern did not prosper.  Its business was light, and, as it was all the time paying interest upon all the capital required to run it, it gradually became more and more indebted to Engel, until, in the spring of 1909, his credit, exclusive of the $1,900 originally invested by him, amounted to upwards of $6,000. Prior to this time, both he and Mack had made some effort to dispose of the plant but without success.  The building was out of repair and the machinery out of date. At this time (March, 1909) the defendant the Doxtator Revolving Cased Shelving Company was about to be organized, and negotiations were opened by Engel with a view to selling the plant of the Mack Sleigh Company to that concern.  In order to effect this sale, Engel bought lot 6 adjoining the Mack Sleigh Company property, which was located on lot 5, for $1,400, and entered into an agreement to sell both to the Doxtator Company for $10,500.  This sum was paid by the issuance to Engel of $7,500 par value (then supposed to be worth 80 per cent., or $6,000) of the Doxtator Company stock, and the execution of a mortgage for $3,000, covering lots 5 and 6. This transaction was authorized by the Mack Sleigh Company at a meeting, notice of which was given complainants, but which they did not attend.  Upon the consummation of the deal, Engel credited the Mack Sleigh Company with the sum of $6,000 on his account.

At this point, and on May 19, 1909, complainants filed their bill of complaint.  They prayed that Engel be enjoined from disposing of the Doxtator stock and the $3,000 mortgage; that he be compelled to give an account of his dealings with the Mack Sleigh Company; that a receiver be appointed for said company; and that its affairs be closed up.

To this bill defendant Engel answered, averring that his dealings with the Mack Sleigh Company were honest and fair, that the sale to the Doxtator Company was an advantageous one for the Sleigh Company, and, after proper averments by way of cross-bill, praying in effect

that complainants be enjoined from interfering with the assets of the Sleigh Company pending the suit. The answers of the other defendants are not material to the controversy.

On July 9, 1909, the court below entered the following interlocutory order:

"In this cause the order to show cause heretofore issued on defendant Engel's cross-bill and the defendant's motions to dissolve the injunction and also for security for costs coming on to be heard, and after reading the bill and answers and affidavits and in support thereof and hearing the arguments of counsel, and the court having duly considered the same, and it appearing to the court that the business of the Mack Sleigh Company, Ltd., is unprofitable and cannot be successfully carried on, and that the sale of the real estate known as lot 5 Factory Sites addition was made in good faith, and that the Doxtator Revolving Cased Shelving Company is an innocent purchaser thereof in good faith, on motion of G. A. Wolf, and C. Roy Hatten, solicitors for defendants, it is ordered, and the court does hereby order and decree, as follows:

"(1) That the injunction heretofore issued herein be and the same is hereby dissolved as to the sale of said lot 5, and that said Doxtator Company are entitled to possession of the premises under their deed and agreement of purchase, subject to the right of the Mack Sleigh Company to use the machinery for ninety (90) days as agreed.

"(2) It is also hereby ordered and decreed that the injunction against George Engel disposing of the stock and $1,600 notes and mortgage received by him be dissolved upon his executing a bond to the complainants in the penal sum of $2,000, to be approved by the register of the court conditioned to satisfy and discharge any decree herein which may be rendered against him in their favor; and in the meantime and until the execution of such bond, that the injunction in that respect remain in full force and effect.

"(3) It is ordered and decreed that an injunction issue against complainants enjoining them from collecting any moneys due the Mack Sleigh Company, Ltd., and that the bills for accounts due be turned over to George Engel, treasurer, to be by him collected and the moneys disbursed for the necessary expenses in working up the material

165 MICH.—35.

now on hand, and that he give a bond with sufficient surety in the penal sum of $500 to the complainants conditioned for his faithful accounting for all moneys received by him. And that John Mack report to Mr. Engel, treasurer, the moneys he has collected and disbursed to date.

"(4) That the defendants' motions for security for costs be and the same are hereby denied."

In December, 1909, defendant George Engel filed a supplemental cross-bill, in which he represented that he had been induced to enter into the deal with the Doxtator Company through false and fraudulent representations of Doxtator, that he had demanded a reconveyance of the property from the Doxtator Company upon the surrender of the $7,500 of stock held by him in that company, which demand had been complied with, and he prayed:

"That the sale and transfer between this defendant and said Doxtator Revolving Cased Shelving Company may be set aside and held for naught; and that said lot 5 be considered the property of said Mack Sleigh Company, Ltd., and its business wound up."

Complainants, answering this cross-bill, take the position that Engel is estopped by his former action from questioning the sale to the Doxtator Company, so far as it affects them, and they claim that the credit of $6,000 should be permitted to stand, and that Engel should be compelled to account for the $3,000 mortgage less the $1,400 thereof assigned to Parmenter for the purchase of lot 6, and that he should further account for alleged overcharges for material and interest.

After a full hearing upon the merits, the following decree, which also contains a statement of fact as found by the court, was entered.

"The court does hereby find:

"(1) That the defendant, George Engel, did not practice any fraud upon, or in any other respect take undue advantage of, the Mack Sleigh Company. He was a dealer in lumber. That was his principal occupation at the time the Sleigh Company was organized. He was induced to take stock in the new company to assist Mr.

Mack in paying two mortgages then covering his plant, aggregating in amount about $1,800. Mr. Mack had been in business alone for some years, had erected and equipped this factory building, and needed financial assistance, and the organization of the Sleigh Company was a means to that end. At the time the company was organized, Mr. Mack had been doing some work for Mr. Engel in cutting lumber into various dimensions at the agreed rate of $3 per thousand feet. After the organization of the company, this work was continued at the same price for some time and until a number of car loads had been cut up. It is now claimed by complainants that the company lost money in doing this work, and that Mr. Engel should account for such loss. The lapse of time that has intervened since the work was done, the subsequent business dealings between the parties, the monthly statements rendered, and the apparent acquiescence of all the parties concerned for so long a period of time, make the position of complainants equitably untenable.

" (2) The same conclusions must be reached with reference to the sales of lumber and the keeping of the books of the Mack Sleigh Company by the Engel Lumber Company. It does not appear that in any instance was the Mack Sleigh Company charged more than the market price for the lumber furnished, nor does it appear that more was charged for keeping the books of the Mack Sleigh Company than the work was actually worth.

" (3) The purchase of lot 6 from Parmenter was an individual transaction in which neither the Mack Sleigh Company nor the complainants have any interest, and therefore is not a proper subject to be considered in this suit for accounting. It may be that, in his effort to collect his claim against the Mack Sleigh Company, Mr. Engel overstepped the just bounds of his legal rights; but it is clear that he was never authorized by the company to buy this lot, nor did the company itself ever buy it. It was a separate transaction.

" (4) Until the filing of the supplemental answer in the nature of a cross-bill by the defendant Engel, both sides were satisfied with the conclusion reached by the court on the motion to dissolve the injunction, to the effect that the sale of the company's property to the Doxtator Company was a good faith sale. Mr. Engel now claims that he was defrauded by Doxtator, and asks to have that

sale set aside. The complainants insist that the sale should stand, and that Mr. Engel should be required to account to them on the basis of a valid sale to the Doxtator Company for $6,000, the proceeds of which have been appropriated by him. The sale should stand. The proof of fraud is too vague to justify the court's interference, under the facts and circumstances shown by this record.

"(5) It appears that the defendant Engel charged up annual interest on his account against the Sleigh Company at the rate of 6 per cent. He should be permitted to charge interest on his account, but only at the rate of 5 per cent., and it should be computed to the date of the settlement of his account against the Sleigh Company.

"(6) It appears that, aside from the real estate and machinery sold to the Doxtator Company, the Mack Sleigh Company has on hand certain tools, lumber, and accounts which should be converted into cash and distributed under the order of the court. There are very few, if any, claims against the company aside from the claim of the defendant Engel; but whatever there are should be properly proven and allowed before a final accounting is had.

"(7) That on a full accounting between defendant George Engel and the Mack Sleigh Company there appears to be an indebtedness due from him to the company at the date of hearing of the sum of $171.72.

"(8) That all the parties interested in the Mack Sleigh Company, Ltd., are before the court, and desire to have its affairs wound up, and the assets sold and its debts paid, and the balance of the proceeds divided *pro rata* among its members in proportion to the respective shares of stock held by each.

"(9) That the Doxtator Revolving Cased Shelving Company conceded on the hearing that it made no claim against the parties for damages, and was willing to take back its stock from George Engel and convey to him lots 5 and 6 Factory Sites addition to the village of South Grand Rapids, subject to the reservations and incumbrances thereon.

"Now, therefore, on motion of G. A. Wolf and J. T. McAllister, solicitors for defendant, George Engel, it is hereby ordered, adjudged, and decreed by the court as follows:

" *First.* That the Mack Sleigh Company, Ltd., is hereby dissolved.

" *Second.* That Edward L. Eardley, Esq., the circuit court commissioner of this county, be and he is hereby appointed receiver of the assets of said Mack Sleigh Company, Ltd., consisting of cash in the hands of George Engel, accounts due said company, stock on hand, consisting among other things, of a quantity of elm, beech, and basswood lumber, unfinished sleighs, tools, and all other property; and said receiver is hereby authorized, empowered, and directed to take possession of said property.

" *Third.* That said receiver proceed to sell all said property, assets, and effects at public sale, and convert the same into money, after giving like notice as is required by sheriffs' sale of personal property. That out of the moneys realized said receiver shall first pay the costs of this suit to the defendant George Engel or his solicitors, and the costs of said sale, and his own fees. That he shall then pay all indebtedness of the Mack Sleigh Company, Ltd., and shall previously give reasonable notice to all creditors to present and prove their claims before him. That any balance remaining he shall divide among the members of said Mack Sleigh Company, Ltd., in proportion to their respective stockholdings, viz. :

| | | |
|---|---|---|
| George Engel, 19 shares | | $1,900 |
| Ida Mack, 18 shares | | 1,800 |
| John Mack, 1 share | | 100 |
| Jacob L. Engel, 1 share | | 100 |
| James W. Latta, 1 share | | 100 |
| Forty shares | | 4,000 |

" And that he promptly file his report of his doing hereunder in this cause.

" *Fourth.* That the cross-bill of the Doxtator Revolving Cased Shelving Company be and the same is hereby dismissed, without costs.

" *Fifth.* That the defendant George Engel recover his costs to be taxed, and that they be paid from the funds of the company by the receiver."

From this decree complainant Ida Mack has appealed. Defendant George Engel likewise filed a claim of appeal. Complainant made a motion that defendant's appeal be not considered for the reason, among others, that

he had not paid the fee of $5 to the register in chancery as required by section 2, Act No. 299, Pub. Acts 1909. This motion was argued with the case.

BROOKE, J. (*after stating the facts*). We will first dispose of the questions raised by the motion. We are of opinion that the statute relied upon by complainant contemplates the payment of but one fee to the register. When this fee is once paid by either party, the opposite party may seasonably claim an appeal, and the costs, including the appeal fee, will be taken care of by the final decree. The other reasons 'assigned by complainant for the dismissal of defendant's appeal have been examined, but we find them to be without merit. The motion to dismiss is therefore denied.

The next question raised is that of interest on sums due from the Mack Sleigh Company to George Engel, computed from time to time at the rate of 6 per cent. per annum. On behalf of complainant it is urged that no interest should be allowed. On the other hand, defendant Engel contends that it was error to reduce the amount charged from 6 to 5 per cent.

As between partners, there is no doubt that a partner who makes advances for partnership purposes beyond the amount of his agreed contribution is entitled to collect interest thereon, at the customary legal rate, even in the absence of any express agreement therefor with his copartners. 30 Cyc. p. 444, note 19; *Bundy* v. *Youmans*, 44 Mich. 376 (6 N. W. 851).

A member of a partnership association, limited, would certainly be in no worse position as to interest upon advances than a member of an ordinary partnership. 2 Cook on Corporations (6th Ed.), § 692.

Assuming, therefore, the right of George Engel to collect interest on his advances, to the Mack Sleigh Company, at what rate should it be computed? Act No. 207, Pub. Acts 1899, fixes the legal rate at 5 per cent., but provides that it shall be lawful for the parties to stipulate in writ-

ing for the payment of any rate of interest, not exceeding 7 per cent. per annum. It was claimed by defendant that it was agreed between him and complainant John Mack that a rate of 6 per cent. should be charged. We are disposed to believe that this agreement was made as claimed, in view of the undisputed testimony that Engel, himself, was borrowing money for the Sleigh Company, and paying that rate for it, and further, that he rendered monthly statements to Mack showing the balance due which included interest charges. It would be entirely equitable, therefore, to make the allowance at 6 per cent.; but, inasmuch as there is no claim made that the agreement for that rate was in writing, as required by the statute, we must hold that the learned circuit judge was correct in reducing the rate to 5 per cent.

Defendant's second position, in which he now seeks, as between himself and the Macks, to avoid the effect of the sale of the Mack Sleigh Company to the Doxtator Company, is untenable. He himself procured the interlocutory order confirming that sale, and we think he is now estopped from questioning its validity, so far as it affects the status of the Macks.

It is claimed by complainant that George Engel should not be permitted to make a profit on his sales of lumber to the Mack Sleigh Company. 2 Cook on Corporations (6th Ed.), § 662, discussing such contracts, says:

"Such contracts as these are investigated very closely by the courts. They are not necessarily void, and are not constructively fraudulent. But if there is actual fraud, or if there has been an undue advantage taken, or an unconscionable bargain made, the court will set it aside. If the transaction is fair, the court will sustain it; if it is unfair, the court will undo it."

We have examined the record carefully and are convinced that Engel dealt with the Mack Sleigh Company in good faith, and charged no more for the lumber sold to it than the current market price for such stock, and that

the prices charged were at all times agreed to between himself, or his subordinate Miller, and Mack.

Complainant invokes section 6083, 2 Comp. Laws, and claims that, as several of the purchases of lumber amounted to more than $500, Engel may not recover. As before pointed out, the transactions were in good faith, were fully executed, and the lumber, the subject-matter of the contracts, appropriated to the use of the Mack Sleigh Company. Aside from this, the association is not a party to this proceeding, and the acts of the complainants, covering a period of seven years, during which they acquiesced in the course of dealing, should now be held to estop them from questioning the validity of the transactions. As bearing upon this question, it may be noted that each year reports were made to the secretary of State as required by law, which reports were signed by George Engel and John Mack, and verified upon oath by John Mack. The indebtedness due from the company to Engel was truthfully shown in these reports, and included in such balances were the sums charged by Engel for the lumber sold and delivered, as well as those charged for interest and keeping the books.

The disposition made by the court below of the claim that Engel compelled the Mack Sleigh Company to do resawing for him at a loss during the first months after the association was formed is affirmed. Engel's account, therefore, as fixed by the circuit judge, will be permitted to stand.

Complainant claims that she should be permitted to participate in the profit made by Engel on lot 6, which he bought for $1,400, and sold to the Doxtator Company for $3,000. We agree with the court below in holding that this was an individual transaction on the part of Engel but, aside from that, the sale to the Doxtator Company, now having fallen through, there are no profits. Engel has bought and paid for lot 6, and he now has it on hand, and has offered to turn it over to complainants for $1,400, the price at which he purchased it.

Complainant Ida Mack, whose stock in the association had been presented to her by her husband at the time of the organization, evidently intrusted her interest to her husband. His salary, as manager, during the eight years of operation just about equals the amount of the indebtedness to Engel. After the lapse of all these years, she cannot be heard to say that, in conducting the business as he did, he acted without her authority. By compelling Engel to stand by his proposition to credit his account with $6,000 for the Doxtator stock, it is apparent he will lose a considerable sum on the re-transfer of the property to him. The record shows that lot 5, together with the building thereon, is probably worth not to exceed $3,000 or $4,000. Aside from this loss, the original investment of over $2,000 is a total loss. To further penalize Engel for an attempt, made in good faith, to put new life into a moribund concern, would, in our opinion, be inequitable.

Although the Mack Sleigh Company is not a party to this proceeding, we can see no reason why the order for its dissolution should not stand. All parties in interest ask for such a decree, and the rights of creditors are protected by its terms.

The decree of the court below is affirmed, and the cause remanded for further proceedings in accordance therewith. No costs will be allowed either party upon this appeal.

HOOKER, MOORE, MCALVAY, and BLAIR, JJ., concurred.