MUNROE, BOYCE & CO *v.* WARD.

1. APPEAL AND ERROR—STATUTORY RIGHT—JURISDICTION.
    Where a claim of appeal was not filed within 20 days after the entry of decree, as provided in 3 Comp. Laws 1915, § 13754, the court has no jurisdiction to entertain the appeal.

2. EVIDENCE—BOOKS OF ACCOUNT—ADMISSIBILITY.
    In order to entitle books of account to reception as evidence, it must appear that the party keeping and producing them is usually precise and punctilious respecting
        207—Mich.—24.

the entries therein, and that they are designed at least to embrace all the items of the account which are proper subjects of entry.

3. SAME—ADMISSIONS.

The books and papers of defendant, offered in evidence by plaintiff, were admissible as admissions on the part of defendant.

4. SAME—BOOKS OF ACCOUNT—ADMISSIBILITY.

A ledger, into which was copied totals from a journal, the original entries being made in small account books and from them transferred to the journal, *held*, too indefinite to warrant its admission as evidence to sustain a claim based thereon.

5. SAME—SECONDARY EVIDENCE.

Testimony as to the contents of books destroyed by fire is competent as secondary evidence.

6. SAME—MATERIAL INTEREST OF WITNESS—CREDIBILITY.

Where the journal and account books had previously been destroyed by fire, testimony by the son of defendant, who copied the items into the journal, as to the contents of the destroyed books, and who had a material interest in the outcome of the litigation, *held*, not so satisfying and convincing as to warrant the appellate court in setting aside the judgment of the trial court rejecting the claim based thereon.

7. PARTNERSHIP—ACCOUNTING.

In a partnership accounting the finding of the court below that the action of one of the copartners in furnishing money and bidding in lumber sold to satisfy a judgment against the copartnership was not open to criticism, but that it safeguarded its interests, *held*, sustained by the record.

8. SAME—ATTORNEYS' FEES—EXPENSES.

Amounts expended for lawyers and other expenses incurred by one of the copartners, in an effort to protect the interests of the copartnership, *held*, reasonable and proper charges to be allowed in a partnership accounting.

9. SAME—INTEREST ON LOAN—INTENTION.

Where money was advanced to a copartnership by one of the partners with the intention that it should be a loan and not a contribution to the capital, interest was properly allowed thereon in a partnership accounting.

Appeal from Ottawa; Cross, J. Submitted June 12, 1919. (Docket No. 62.) Decided October 6, 1919. Rehearing denied December 23, 1919.

Bill by Munroe, Boyce & Company, a copartnership, against Michael Ward for an accounting. From the decree entered, defendant appeals. Affirmed.

*Lillie, Lillie & Lillie,* for plaintiff.

*Ellis & Ellis* and *M. Thomas Ward,* for defendant.

The learned trial judge who heard this case filed an opinion at the close of the proofs, which clearly and concisely states facts sufficient for an understanding of the issues which are before us for consideration. It is as follows:

"The bill of complaint was filed in this cause for a partnership accounting. Issue was joined and proofs taken by depositions, before a commissioner, and in open court.

"The plaintiff, a copartnership, composed of Stephen L. Munroe, Sherman H. Boyce and Nelson R. Howlett, of Grand Haven, Michigan, were engaged in the business of manufacturing and selling lumber and timber. Mr. Boyce died in 1904, and Nelson R. Howlett was made executor of his estate. Upon the death of Mr. Boyce, the partnership affairs were not closed, but were continued under the firm name; Mr. Howlett, as executor, represented the estate of Mr. Boyce.

"The defendant, Michael Ward, of Harvard, Michigan, and his brother, James Ward, Sr., under the firm name of Ward Bros., had been engaged for many years in buying and selling timber and logging the same. James Ward, Sr., died and Michael Ward acquired the interests of James Ward, Sr., and continued in the same business.

"Munroe, Boyce & Co. and Michael Ward entered into an oral partnership agreement, and bought timber land and cut the timber into lumber and sold the same. When the timber from a certain tract was sold,

the parties would have a settlement, and each party would share one-half of the profit or loss.

"In November, 1884, the parties purchased a large tract of timber land in the State of Minnesota, and in 1910 they started logging operations upon this tract.

"On the 19th day of September, 1910, the plaintiff and the defendant entered into a written contract with Wick O'Connell & Co. to cut and haul the timber on certain parts of the Minnesota lands, for the sum of $6.75 per thousand feet.

"After operating for a time under this contract it was discovered that the scale of the logs made in the woods was much larger than the scale made at the sawmill, and in the fall of 1911, a new contract was entered into between the parties. By the terms of this contract the final settlement with Wick O'Connell & Co. was to be made after the scale of the lumber at the sawmill.

"Munroe, Boyce & Co. and Michael Ward had no definite agreement as to just what authority James Ward, a son of the defendant, had in reference to the logging operations, but in a general way it was left to him to look after the interests of both parties in the timber transactions in Minnesota.

"On December 1, 1911, the plaintiff employed James B. Alverson to go into the woods in Minnesota, and look after its interests.

"The books of account were kept by James Ward and James B. Alverson. A reference to the books so kept will show that neither party was an experienced bookkeeper. The checks to pay the accounts were signed by James Ward. Reports were made by James B. Alverson to the plaintiff.

"In the fall of 1913, Wick O'Connell & Company were financially unable to go ahead with their contract, so a new arrangement was made with them by James Ward to guarantee the payment of the bills for the logging job. Thereafter the bills of Wick O'Connell & Co. on the logging job were paid by the plaintiff and the defendant, and charged to the account of Wick O'Connell & Co. Checks for the same were given by James Ward, and the items were entered

in the books of account by James B. Alverson or by James Ward.

"The result of the operations under this arrangement was an increase in the cost of the logging operations over and above the original contract price of $6.75 per thousand feet.

"A dispute arose with Wick O'Connell & Co. as to the construction of the terms of the written contract and a lawsuit resulted. A judgment was rendered against Munroe, Boyce & Co. and Michael Ward, and upon appeal the same was affirmed by the supreme court of Minnesota. To satisfy this judgment a levy was made upon the lumber belonging to the parties.

"Disputes arose between Munroe, Boyce & Co. and Michael Ward, and the bill of complaint in this case was filed, and an injunction was issued restricting the defendant from disposing of any of the assets of the partnership, including the lumber on hand.

"After the bill of complaint was filed, and upon application of the plaintiff, the defendant was ordered to file all the books and papers pertaining to the business of the parties, with the county clerk, so that either party could examine the same.

"The plaintiff employed the Michigan Trust Company to make an audit of the books. An audit was made by H. W. Fick, an expert accountant, of the books, etc., of the timber transportations for the years 1911 to January, 1915, and the same was offered in this case, being 'Exhibit N.'

"The report of the auditor was divided into two schedules, marked 'A' and 'B.' Schedule 'A' includes all the items of disbursements which were substantiated by proper invoices, receipts or other written evidence of payment and debit. Schedule 'B' shows the same accounts as are included in Schedule 'A' and also includes a list of items which were not substantiated to the satisfaction of the auditor, by proper invoices, receipts or other written evidences of debt and payment.

"Testimony was taken in regard to all of the items and after a careful consideration of the same, it appears that Schedule 'B' is a correct statement of the amount due the plaintiff, with the following exceptions; the proof is insufficient to substantiate the following items:

July 31, 1914, cash telegrams.................. $3.77
August 22d, 1914, Dan Campbell................ 21.00
  Checks:
April 6th, 1911, Postal Telegraph Co........... $2.60
July 9th, 1912, S. A. Story.................... 7.95
September 3d, 1913, A. D. Ellefson............. 10.00
September 23d, 1913, Thos. Kearney............ 50.00
December 1st, 1913, James Moonan............. 207.55
August 29th, 1913, Thos. Kearney............. 114.10
January 5th, 1915, S. A. Story................ 1.34

"These items amount to the sum of $418.31 and one-half of this sum should be added to the amount due plaintiff as shown by Schedule 'B,' viz.: $9,364.11, making a total of $9,573.26.

"The testimony shows that the following items listed on page 71, of the report of the auditor, and not listed in Schedule 'B,' should be allowed, viz.:

Aug. 12th, 1914, Marshall Wells Hdwe. Co..... $28.67
Locke No. 279, for labor...................... 78.85
Williams No. 280, for labor.................. 76.95
April 3d, 1914, Parker & Ayres, J. 16......... 192.00
October 7th, 1914, Parker & Ayres, J. 68........ 62.00
January 15th, 1914, Ledger B. Folio 176, C. 125
  check 1876 ............................... 6.50
February 22d, 1914, E. A. Kemp & Son, insurance 302.40

"These items amount to the sum of $747.37, and one-half of this amount should be charged to the plaintiff and deducted from the sum of $9,573.26, which leaves a balance of $9,199.58, due plaintiff from defendant, together with interest at five per cent. from March 30th, 1915, to the date of payment.

"Plaintiff had notice of the change of the contract with Wick O'Connell & Co. before all the payments had been made thereon, and cannot now charge the defendant for the amount of the overpayment of the original contract price.

"After the bill of complaint was filed in this cause, the judgment obtained by Wick O'Connell & Co. was affirmed by the supreme court of the State of Minnesota, and the lumber levied upon was sold under an execution to satisfy that judgment. Prior to the sale, Munroe, Boyce & Co. endeavored to have Michael Ward raise his share of the money to pay the judgment, but

the defendant failed to raise the money, and to protect the interests of the parties, one of the partners, Stephen L. Munroe, made an arrangement to attend the sale to see that the lumber belonging to the partnership was sold for at least enough to pay the judgment and costs. Mr. Munroe personally bid at the sale the amount necessary to satisfy the execution and the costs of sale. The amount bid was paid by Mr. Munroe, and the lumber was then turned over to him. Afterwards, Mr. Munroe sold this lumber for the sum of $53,234.79, its fair market value at that time.

"The defendant contends that Mr. Munroe should account to the defendant for one-half of the profits on the sale of this lumber.

"At the time of the purchase and sale of the lumber, the partnership between the parties had not been dissolved, and Mr. Munroe, a partner, could not make a purchase of the property of the firm at an execution sale, against the interests of the other partner.

"Testimony was taken as to the amount paid for the lumber, the amount for which it was sold and the expenses thereof, and although Mr. Munroe made the purchase and re-sale in good faith, yet under the law he will be required to account to the defendant for one-half of the amount received by him on the sale of the lumber, less the amount paid to satisfy the execution and the expenses of the sale.

"The testimony shows that Mr. Munroe incurred the following expenses in looking after the lumber after the same had been attached, until same was finally sold, viz.:

| | |
|---|---|
| November 2, 1914, expense to Minnesota | $70.00 |
| November 2, 1914, services, Lillie & Lillie | 132.85 |
| August 15, 1915, expenses to Minnesota | 75.00 |
| August 15, 1915, services, Lillie & Lillie | 125.00 |
| August 16, 1915, expenses, S. L. Munroe | 42.30 |
| September 9, 1915, telegrams | 1.90 |
| September 10, 1915, making lists of lumber | 2.00 |
| September 12, 1915, expenses, S. L. Munroe | 58.54 |
| September 15, 1915, expenses, S. L. Munroe, Chicago | 8.50 |
| September 15, 1915, expenses, S. L. Munroe, Winton | 54.00 |

September 15, 1915, services, Lillie & Lillie......$176.43

September 27, 1915, Mr. Sias, services.......... 15.00

September 29, 1915, insurance................. 24.93

October 1, 1915, interest...................... 209.74

October 1, 1915, revenue stamps............... 6.80

October 6, 1915, John H. Moore, services...... 187.13

"These items amount to the sum of $1,190.12, and added to the sum of $33,980.83, the amount paid to satisfy the judgment, make his total expenditures the sum of $35,170.95, and deducting this sum from the amount received for the lumber, viz.: $53,234.79, leaves a balance of $18,063.84. One-half of this sum, or $9,031.92, Mr. Munroe will be required to pay to the defendant, together with interest at five per cent. from September 29, 1915, to the time of payment of same.

"The tug, boom chains and any other personal property on hand should be divided equally between the parties.

"During the trial of this case it appeared that defendant was mentally incompetent to transact business and a guardian *ad litem* was appointed to represent him. Before the conclusion of the case the defendant died and his administrator appeared and defended the case.

"The partnership being dissolved by the death of the defendant, the partnership affairs should be wound up and closed. The plaintiff will recover costs.

"The amount of the witness fees of the expert accountant is not determined, for the reason no proof was submitted as to the cost of the same. Proofs may be submitted and the amount of the same will be determined on a settlement of a decree herein.

"A decree may be prepared for signature in accordance with these findings."

Thereafter certain amendments were made to these findings, as follows:

"Certain amendments to the findings heretofore filed having been proposed, and upon the consideration of the same it appears that the accounts receivable in the sum of $625.29 were charged to the defendant, and the accounts payable of $27.03 were credited as

paid by the defendant. One-half the accounts receivable belong to each of the parties, and each party should pay one-half of the accounts payable.

"It also appears that certain advancements of money were made by the plaintiffs in September and October of 1915 and January, 1916, after the bill of complaint was filed. These items should not bear interest from the date the bill of complaint was filed, but only from the date of the payment of same. This would make a credit on the interest item of $83.64.

"It also appears that the item of 'September 27, 1915, Mr. Sias, services, $15.00,' should be stricken from the findings, as the same appears in the report of the auditor. This correction gives the defendant a credit of $7.50 in addition to the amount due from Stephen L. Munroe.

"The expert accountant, acting as a witness in the trial of this cause, is not included within the provisions of the statute in regard to employing and paying expert witnesses, therefore no order will be made for the payment of extra fees."

From a decree entered in accordance with this opinion and this amendment, both the plaintiff and defendant have filed notices of appeal.

KUHN, J. (*after stating the facts*). The decree in this cause was signed and filed on the 8th day of February, 1918. The record discloses that the plaintiff's claim of appeal was dated March 18th, 1918. The first question for us to determine is whether or not counsel for plaintiff are in a position to claim that they have the right and benefit of an appeal to this court. Section 13754, 3 Comp. Laws 1915, provides that—

"Any party desiring to appeal from the order or decree of the circuit court in chancery shall, within twenty days after the entry of such order or decree, file or cause to be filed a claim of appeal in writing with the clerk of the court where such decree or order was entered, and shall also within the said twenty days pay a fee of five dollars to the clerk:" etc.

We held in *Guthrie* v. *Leelanau Circuit Judge,* 197 Mich. 321, that the payment of the appeal fee to the register in chancery within twenty days after the filing of the decree was mandatory. The right of appeal is a statutory one, and unless the mandatory provisions of the statute are complied with the court has no jurisdiction to entertain the appeal. See *Bolton* v. *Cummings,* 200 Mich. 234; *J. F. Hartz Co.* v. *Lukaszcewski,* 200 Mich. 230; *Miller* v. *Johnson,* 201 Mich. 535; also *Brevoort* v. *Wayne Circuit Judge,* 203 Mich. 388. We must therefore take the case as if no notice of appeal had been filed by plaintiff, and will therefore consider only the questions which are urged by defendant's counsel for modification of the decree. These questions are thus stated in their brief:

"1. The defendant claims $2,922.05 by reason of money paid out and expended by Michael Ward during the period named, and if interest is allowed to the plaintiff, the defendant would be entitled to the interest on this money during the same period that the plaintiff drew interest on their money they advanced, but we contend that neither side was entitled to interest.

"2. Defendant also claims and gives evidence tending to show that in the year 1911 Michael Ward had charge of this business in locating roads and a way in which the timber could be gotten out from where it was to the mill where it was sawed; that he expended for that purpose in money actually paid out $831.58. (R. p. 675.) He of course would be entitled also to interest, if the plaintiff was entitled to recover interest on the money they advanced.

"3. Defendant also claims that wrongfully and without cause, and when as a matter of fact there was no considerable money due to the plaintiff, they refused to sell this lumber and thereby kept it over, part of it a year and part of it nearly two years, and a large loss occurred in the carrying charge, insurance and so forth.

"4. It also appears in the case, as we have already mentioned, that instead of paying the judgment re-

covered in Minnesota and saving expense, that the plaintiff permitted the lumber to be sold at public auction, thereby incurring an expense of over 700, and that that matter should be charged to the plaintiff; also that the plaintiff should stand whatever expenses he made in that behalf for help or otherwise.

"It is also claimed that the lumber on hand at the time of the sale and the time it was bid off by Munroe, was worth in the market between $12,000 and $15,000 more than it was sold for by Munroe, and that the plaintiff should account for this lumber at the market value, and one-half of that sum should be paid to the defendant.

"5. It also appears by the evidence that at the time that the plaintiff refused to allow lumber to be sold, that there was not, in fact, anything due to the plaintiff on the operating charges; that after that and after they had their injunction, the plaintiff paid certain charges that had been before that time incurred, and the court allowed interest on the money so advanced, and the interest on the money that had been paid for taxes; that this is unjust and contrary to law, and should be deducted, or credited back to the defendant.

"6. It also appears that Munroe, Boyce & Company hired attorneys for their own use and benefit; attorneys who were representing them in this case; that the attorneys were not hired to represent the defendants in any way, but the court allowed them to bring in those attorney fees and charge them in this case as an item against the defendant.

"7. It also appears that Munroe, Boyce & Company put up a fictitious bill that they never intended to charge against anybody, and brought it in and presented it, and a portion of that was allowed against the defendant; that their excuse for doing it was that Michael Ward charged for what he did in 1911, and that James Ward had his expenses, although there was no evidence to show that he ever charged anything that he did not actually expend for the benefit of the company.

"8. In addition to the above there were certain items of money paid out for freight, labor and like expenses, which are shown in the report of the auditor, which were not allowed to the defendant, and which should be allowed, we contend, in this case."

The court made an order requiring Michael Ward to produce his books and papers relating to the Minnesota lumber job, which books and papers the accountant desired for certain items to make up his account and report. Among other books was a ledger, which was offered in evidence and known in the record as "Exhibit H." The ledger was a private book of Michael Ward and was not a record of any partnership transaction. It showed charges against Munroe, Boyce & Co. in the sum of $2,922.05. The ledger was kept by James P. Ward, the son of Michael Ward, who stated that he had entered the balances of certain accounts making up these items in this ledger and that the items were taken from other books, the original entries being made in small account books by his father and transferred by the witness, James P. Ward, to a journal and the totals transferred from the journal to the ledger. These small account books and the journal had been previously destroyed by fire or were lost and were therefore not produced. It is the contention of counsel for defendant that the court erred in disallowing these items, because the ledger furnished adequate proof of the claim against Munroe, Boyce & Co. We are of the opinion that the court reached the proper conclusion in holding that the ledger did not furnish evidence sufficient to sustain the claim of the defendant for the items under discussion. The rule to entitle books of account to reception in evidence was well stated in *Countryman* v. *Bunker*, 101 Mich. 219, as follows:

"In order to entitle books of account to reception as evidence, it must appear that the party keeping and producing them is usually precise and punctilious respecting the entries therein, and that they are designed at least to embrace all the items of the account which are proper subjects of entry."

See, also, *Mally* v. *Excelsior Wrapper Co.*, 181 Mich.

568; *Davis* v. *Buttars*, 201 Mich. 244. We notice that there were no itemized statements made of these amounts in the ledger and that they did not embrace any items of account which were the proper subject of entry. We think that the ledger was entirely too indefinite to warrant its admission as evidence of these claims under the well established rule in this State. The books and papers of Michael Ward were used by the plaintiff simply as admissions on his part, and for this purpose they were clearly admissible.

James P. Ward testified as to the contents of the lost and destroyed books. He attempted to explain from his recollection what the footings of the ledger, entered by him from those books, were made up of in detail. The whole record now being before us, Was this testimony competent and sufficient to establish the defendant's claim now being urged by his counsel? Unquestionably, the original books having been destroyed, his testimony was competent as secondary evidence to be offered in support of the claim. The question before us for consideration at this time is, however, whether or not this testimony was sufficient to satisfactorily prove the claim and warrant us in setting aside and reversing the findings of the circuit judge with reference to it. It is a question of the credibility of a witness and the reliability of this class of testimony, standing alone, in support of the account. Mr. Chamberlayne, in his Handbook on Evidence (Students Edition), § 919, very aptly says that a pertinent fact to be considered by the court in weighing this class of testimony is, not only whether—

"the aeclarant was possessed of adequate knowledge, but whether he was free from controlling motive to misrepresent. This lack of motive to misrepresent, upon which the subjective relevancy of the evidence is based, is taken or assumed to be established by the automatism of habit, the regular doing of an act

where the declarant has no motive to misrepresent, but has every reason, in discharge of his business, professional, or official duty, to assert the truth."

Considering the fact that the witness, being a son of the defendant, had a material interest in the outcome, we are not prepared to say that the testimony offered in support of the claim is so satisfying and convincing as to warrant us, an appellate court, having simply the record before us, in setting aside the judgment of the trial court, who, in weighing the evidence and passing thereon, had the benefit of hearing and seeing the witness upon the witness stand. We are satisfied that the evidence is not sufficient to warrant us in setting aside the trial court's determination with reference thereto.

What has been said with reference to item No. 1 also applies to item No. 2, as it was sought to prove this item also by the introduction of the ledger account and the testimony of James P. Ward.

Claims Nos. 3 and 4 relate to the action taken by the plaintiff to safeguard the rights of the parties in the lumber which was about to be sold to satisfy the judgment and costs obtained against the parties in the Minnesota courts. We have carefully examined the testimony in reference to these claims and find no merit in them. It clearly appears that plaintiffs did everything in their power to induce the defendant to advance money to satisfy this judgment, but it appears that they did not receive any replies to their letters and telegram sent to Michael Ward in reference to the payment of the judgment or in reference to the sale of the lumber. Everything that Stephen L. Munroe did with reference to the transaction appears to have been done in an effort to safeguard their interest in the lumber, and there is no satisfying evidence that there was any deceit or fraud on his part in the transaction. By taking the step that he did in bidding at

the sale and afterwards selling the lumber, he protected 'the rights not only of himself, but of Michael Ward, and by the decree of the court below he has been made to account to Ward for his interest in the funds received from the sale of the lumber.

Criticism is made of the fact that certain charges were allowed by the court because of the fact that Munroe, Boyce & Co. hired lawyers and incurred other expenses in their effort to protect the interests of the parties in the lumber. We have examined these items and think that they were reasonable and proper and were properly charged against the copartnership funds by the court.

Contention is made that the court also erred in allowing interest on certain funds advanced by one of the partners towards the business without an agreement clearly expressed or implied. The general rule is thus stated in 20 R. C. L., at page 1021:

"While it seems impossible to lay down any unbending rule on the question whether interest should be allowed or disallowed on partnership accounts, the general rule appears to be that, in the absence of an agreement to the contrary, interest is not to be allowed on partnership accounts until after a balance is struck. Hence, if moneys are advanced by a partner, he is not entitled to interest on the amount in the absence of an express agreement on the subject, or something in the usages of business or the surroundings of the parties from which an intent to allow it may be inferred."

And further:

"If the circumstances indicate that it was the intention of the parties that a partner should advance money as a loan instead of a contribution to the capital, the courts may accord to him a creditor's right to interest."

The following Michigan cases sustain the rule that interest will not be allowed in the absence of agree-

ment express or implied: *Godfrey* v. *White*, 43 Mich. 171; *Sweeney* v. *Neely*, 53 Mich. 421; *Thompson* v. *Noble*, 108 Mich. 19. See, also, *Young* v. *Barras*, 74 Mich. 343, and *Wells* v. *Babcock*, 56 Mich. 276, 282, in which interest was agreed upon. In the most recent case, *Mack* v. *Engel*, 165 Mich. 540, where the question was whether interest should be allowed on advances made by a member of a partnership association, limited, the court said the following:

"As between partners, there is no doubt that a partner who makes advances for partnership purposes beyond the amount of his agreed contribution is entitled to collect interest thereon, at the customary legal rate, even in the absence of any express agreement therefor with his copartners. 30 Cyc. p. 444, note 19; *Bundy* v. *Youmans*, 44 Mich. 376.

"A member of a partnership association, limited, would certainly be in no worse position as to interest upon advances than a member of an ordinary partnership. 2 Cook on Corporations (6th Ed.), § 692."

In view of the previous decisions of this court cited above, the rule thus stated may have been stated somewhat too broadly, as it would seem that unless it satisfactorily appears from all the facts and circumstances in the case that it was the intention of the partners that the moneys advanced should bear interest (which clearly appears in *Mack* v. *Engel, supra*), which would thus create an implied agreement, interest should not be allowed in the absence of an express agreement therefor among the partners. In the case before us, considering all the circumstances under which the advances in question were made—that they were made only after repeated solicitation on the part of one of the partners to the other to advance sufficient funds to protect his interest—it would seem that the legitimate inference to be drawn—and we do draw it—from the testimony, is that it was the intention as to the moneys thus advanced that they should be ad-

vanced as a loan instead of any contribution to the capital, and that therefore the court did not err in allowing interest on these amounts.

We have examined the other claims of counsel and do not find that there is anything that would warrant us in disturbing the findings of the circuit judge.

From a review of the whole record we are of the opinion that the decree as made should be affirmed, without costs to either party.

BIRD, C. J., and MOORE, STEERE, BROOKE, FELLOWS, and STONE, JJ., concurred.

The late Justice OSTRANDER took no part in this decision.